ADAM PICKETT, Appellee, v. MARY A. COMSTOCK et al., Appellants.

No. 40013.

F<small>EBRUARY</small> 18, 1930.

*Frank Wisdom* and *F. D. Wisdom,* for appellants.

*George A. Johnston,* for appellee.

E<small>VANS</small>, J.—Prior to the date of the contract herein involved, the plaintiff was the owner of an 80-acre farm situated in Union County. The defendant Mrs. Comstock was the owner of a  residence property at Bedford, in Taylor County. Her codefendant is her husband. Both defendants were and are residents of Bedford. The plaintiff was a resident of Creston, in Union County. One Watts was a real estate agent, resident in Creston. The plaintiff listed his farm with Watts for sale at $100 an acre. Mrs. Comstock listed her Bedford property with the same agent for sale or exchange at $4,500. Watts assumed to act as agent for both parties, and brought about a contract of exchange of properties, which contract is that involved in this controversy. The defendants, by their pleadings, resisted specific performance, and prayed for a rescission of the contract. As ground of rescission they pleaded the fraud of

970

Watts in bringing about the exchange, as agent of the plaintiff. They also pleaded a general denial. They also objected to the title tendered by the plaintiff. They also pleaded that the contract was unconscionable, and that for that reason it should not be specifically enforced.

It appears that, on Sunday, October 9, 1927, Watts took them upon the plaintiff's premises. Mrs. Comstock herself was in very feeble health, and had been so for several years. When she arrived at the place, she was physically unable to make any examination of it, and returned to her car. Watts and Comstock made a limited examination of the place. It is claimed by the defendants that Watts was in a great hurry, and that the examination was cut short on that account. This personal inspection of the farm was a very influential fact as against the defendants, and was properly so regarded by the trial court. The defendants remained at Creston Sunday night. On Monday morning, Watts took them to the law office of the plaintiff, Watts having conferred with the plaintiff the evening before. Watts had talked over the terms of a trade with the defendants, before going to Pickett's office. The contract was entered into substantially in accord with the terms formulated by Watts, and after very brief negotiations. The Bedford property was taken in the trade by plaintiff at $4,500, and the farm was taken by the defendants at $8,500. A purchase-money mortgage was to be executed by the defendants to the plaintiff for the difference in values. It was provided in the contract that abstracts were to be exchanged by October 20th, and that the contract was to go into effect and possession of the properties was to be mutually taken on November 1st. A few days thereafter, the defendants contend, they discovered that they had been greatly misled and deceived, to their substantial injury. They objected to the title tendered by the plaintiff, and sought also a rescission of the contract. The controversy before us presents three phases:

1. Was the contract an unconscionable one, in the sense that specific performance should not be enforced?

2. Was the plaintiff's tender of title in conformity to the contract?

3. Were the defendants misled and deceived by Watts; and if so, should he be deemed the agent of plaintiff?

I. The undisputed evidence in the record is that the farm

in question was worth not to exceed $50 an acre. Its acreage was uncertain, ranging in uncertainty from 75 to 80 acres. The evidence shows, without substantial dispute, that the Bedford property was worth $4,500. Upon these valuations, the $4,000 mortgage to be executed for the purchase money by the defendants would more than absorb the full value of the farm, and the defendants would get nothing for their Bedford residence. It is urged by counsel for appellee that the plaintiff himself, as a witness, had testified that the farm had cost him $100 an acre, seven years ago, and that this was some evidence that the property was worth that amount. What appears from the record is not that the plaintiff bought this property at $100 an acre, but that he foreclosed a second mortgage ·upon it against an insolvent debtor, and that he got nothing for his mortgage except this property. In his petition of foreclosure, he averred that the property was inadequate to pay the debt, and he obtained the appointment of a receiver on that ground. This constituted no evidence of value, either at that time or since. It is also urged that the defendants offered no competent evidence of value, for the reason that their witness on the subject was not shown to be competent to testify. The witness was Jandrey. He had farmed the place, and was shown to be familiar with it. He was examined as to his qualifications. When asked if he knew the value of it, he replied by stating such value. This is the ground upon which the appellee now challenges his competency. It is made here for the first time. No objection was interposed in the trial court. In the absence of such objection, it was not requisite that the defendants reject the answer and re-examine the witness. Such evidence was sufficient prima-facie proof. If false or inaccurate, it was susceptible to contradiction. In order to controvert it, the plaintiff called the witness Wickham, who was familiar with the farm, and who fully described it. He declined, however, to fix any price upon it. His description of the quality of the farm was consistent with that of Jandrey. The plaintiff pursued the subject no further. Upon such state of the record, we would not be warranted in holding otherwise than that the value was approximately that fixed by the witness.

Undeniably, the quality of the farm was exceptionally poor. Its topography was very rough and hilly. There were two

ditches thereon. One of them was twenty feet deep, and was discovered by the defendants only after they had entered into the contract.

It is urged by plaintiff, however, that the Bedford property was worth less than its listed price. He offered no evidence to that effect. The affirmative evidence shows that it was worth approximately the listed price. The residence had just been built, at a cost of $4,100. Whether this was the cost of both the residence itself and the ground occupied by it, is not clear in the record. The only evidence offered to negative such value was that of the plaintiff, as a witness, who testified that, pending the litigation, he had offered the residence to the deputy sheriff (who was serving certain papers) for $3,000. This offer, with its non-acceptance, is urged as evidence of value of that property. It has no quality of evidence to that effect.

The mathematical result of the contract was to give to the plaintiff the Bedford property unincumbered, and a mortgage on the farm for an amount in excess of its value. It must be said, therefore, that the contract was unconscionable, within the view of a court of equity where specific performance is sought. This finding would, of itself, defeat the present action. It would not, however, necessarily set aside the contract, or determine the question of the defendants' right of rescission.

II. Were the defendants entitled to a rescission? This question has two phases:

(1) Were they entitled to it by reason of what had transpired preceding the contract, to induce the same?

(2) Were they entitled to it by reason of what had transpired after the making of the contract?

We take up the second question first. This farm was properly described upon the records as the southwest quarter of the northeast quarter and the fractional northwest quarter of the southeast quarter of a certain Section 11. It had no highways  upon any boundary. Federal Highway No. 34 crossed it in an easterly-westerly direction, not quite parallel with the south line thereof, and about 20 rods or more distant therefrom. At the southeast corner thereof, a triangular patch, comprising an acre and a half, had been cut off, and subjected to highway uses. It was thus occupied as a part of an "old

road,'' later abandoned. The farm was, therefore, referred to as containing 78 acres and a half, in the negotiations leading up to the contract. The plaintiff refused to commit himself to an acreage in excess of 75 acres, but professed not to know the acreage. He also said that the south 40 was a ''fractional 40.'' At the same time, Watts said, in the presence of both parties, that the ''papers were out'' to give back the detached acre and a half to the farm, and that the defendants would have ''four  square corners'' to the same. The written contract entered into was dictated by the plaintiff in the presence of the defendants, and was then and there transcribed and signed. This 40 was described therein as ''fractional,'' as before indicated herein. The description adopted was sufficient to convey title to the grantee to the acre and a half in question.

Upon presentation of plaintiff's abstract, many defects were discovered and complained of. The plaintiff brought an action to quiet title, and served notice on a host of defendants by publication. This proceeding went to decree some months later. Before bringing such action, however, the plaintiff tendered his deed of the farm to the defendants, and demanded conveyance by them. He thereupon brought this action, to reform his contract and to enforce. In this action he sought three corrections in the contract. The first was the correction of a clerical error, whereby the south 40 was described as the ''fractional northeast quarter of the southeast quarter of Section 11;'' whereas it ought to have been described as the ''fractional northwest quarter of the southeast quarter.'' He was entitled to the correction of this manifest error, and obtained the same in his decree. The other correction claimed by him was that the description should be changed to read at this point, ''fractional *part* of the northwest quarter of southeast quarter,'' and that the general description should be qualified as follows: ''To be more particularly described in the deed.'' These three corrections were incorporated in the decree. The first correction was clearly proper. The opinion of the court, as made of record, indicated that its attention was directed only to that correction, and no reference was made in the opinion to any other. The formal decree, however, was as broad as the prayer of the petition, and adopted all the corrections. There was no substantial support in the record

for either of the last two corrections. We have read the plaintiff's own evidence as a witness, and we find nothing in it that refers to either correction. To change the word "fractional" to "fractional *part of*" was to quite change the force and effect of the description. It also rendered the description uncertain, whereas it was certain before. It was sought to restore the certainty to the description by adding the last clause, "to be more particularly described in the deed." These changes simply represented the plaintiff's conception of an amended phraseology. There was no fair basis in the evidence for treating them as correctable errors. For 40 years the tract in question had been described in successive conveyances as the "fractional northwest quarter of the southeast quarter." Such description appeared in Conveyances 37, 38, 40, 41, and 45 on plaintiff's abstract of title. Before bringing this action, the plaintiff had taken the ground that he was entitled to these three reformations. Prior to bringing this action, he tendered his deed of the farm to the defendants, and described the same in accord with such contention. In such tendered deed he made two specific reservations. One of these was the reservation of the acre and a half at the southeast corner. In the meantime, and in December, 1927, he had obtained from Union County a quitclaim deed of this acre and a half, which evidenced its relinquishment and non-user as a highway and its reversion to the government subdivision. If such tendered deed had incorporated the description contained, and intended to be contained, in the contract, "fractional northwest quarter of southeast quarter," it would have carried to the grantee all the right acquired by the plaintiff under his deed from Union County. This would be in conformity to the oral negotiations preceding the contract. But the plaintiff expressly reserved to himself, in the tendered deed, the acre and a half tract. This contention was in clear violation of the terms of the contract, and of itself became a breach thereof. This contention of the plaintiff's is predicated upon his alleged right to incorporate a particular description in the deed other than the description incorporated in the contract. We are holding that he was not entitled to reformation at this point. Furthermore, the material feature of the controversy at this point is not so much a question of description as it is a question of the right of the plaintiff to make an *exception* or *reservation* from the de-

scription contained in the contract itself. Under the terms of the contract, the defendants would have a right to acquire from the plaintiff all the right or title that he had, including a right of reversion of the "old road." The reservation in the tendered deed repudiated the contract in that regard.

It necessarily follows that the plaintiff has, by his own wrongful attitude, released the defendants from all obligations of the contract, and has worked a rescission thereof at their election, which they have exercised.

Other features of the controversy need not be considered.

The decree below is—*Reversed.*

MORLING, C. J., and FAVILLE, ALBERT, KINDIG, and GRIMM, JJ., concur.